COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton,[*] Judges Frank and Clements
Argued at Chesapeake, Virginia


CARLOS DEMARON BROWN

                                          MEMORANDUM OPINION[**] BY
v.        Record No. 0226-05-1        CHIEF JUDGE WALTER S. FELTON, JR.
                                                APRIL 18, 2006
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                          Norman A. Thomas, Judge

             Harry Dennis Harmon, Jr., for appellant.

             Denise C. Anderson, Assistant Attorney General (Judith Williams
             Jagdmann, Attorney General, on brief), for appellee.


        Carlos Demaron Brown ("appellant") was convicted by a jury of attempted robbery and

sentenced to three years imprisonment.  Appellant was also found to be in violation of probation

imposed as a condition of two previously suspended five-year prison sentences.  Following

appellant's conviction and sentencing for attempted robbery, the trial court revoked each of

appellant's previously suspended sentences and ordered a portion of those sentences be served

consecutive to his sentence for the attempted robbery.

        On appeal, appellant argues that the trial court erred in its pretrial ruling that the tape

recording of the victim's 911 call to the police would be inadmissible lay testimony as to the

ultimate issue to be determined by the jury.  Appellant contends that the "statements were

admissible as an exception (mental state) to the ultimate issue of fact rule."  He also contends

---

[*] On April 1, 2006, Judge Felton succeeded Judge Fitzpatrick as chief judge.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that the trial court erred in denying his motion to strike the evidence, and that it abused its discretion in sentencing him to consecutive terms of imprisonment for violating the terms of his previously suspended sentences, and in ordering that those sentences be served consecutive to the three-year sentence imposed for his conviction of attempted robbery. Finding no error, we affirm the judgment of the trial court.

BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (citation omitted).

So viewed, the evidence established that in March 2004, appellant entered a fast-food restaurant and approached the shift manager, Sabrina Allen ("Allen"), carrying a small blue knife in his hand with the blade open. Appellant told Allen to, "[g]ive me your money." Allen initially laughed, was uncertain whether appellant was serious, and "shook it off because it was a small blade." Appellant repeated his demand for a second time, while holding the knife "in the same position, up where [Allen] could see it." Dianna Ross ("Ross"), another employee of the fast-food restaurant, witnessed the interaction between appellant and Allen, and initially "just started laughing like it was a joke." Appellant then demanded money from Allen a third time, brandishing the knife over the cash register, and "holler[ed]" to Ross, "[h]ey, you, give me all the money." While appellant grew up in the same neighborhood with Allen, Allen did not "know him personally," had never had a conversation with him, and had never joked around with him.

Ross also did not initially recognize appellant, with whom she had attended middle school, because it had "been a long time" since she had last seen him.

Concerned, Allen went to the back of the store to call 911, but was unable to get a dial tone. She returned to the front of the store, where appellant was still standing with the knife in his hand. Appellant then ordered food and handed Allen money to pay for his order. When Allen opened the cash register, appellant said, "[y]ou think I'm playing; give me your money," in a "demand type" tone while holding the knife on top of the cash register, closer to Allen. He was "swinging [the knife] around" and not smiling when he made his repeated demand. Allen quickly closed the cash register and again went to the back of the store because "she felt nervous and [felt] like [she] needed to call 911," asking Ross to stall appellant while she called 911.

An officer, dispatched to the fast-food restaurant in response to Allen's 911 call, saw appellant leaving the restaurant. Appellant was arrested and charged with attempted robbery.

Immediately prior to the beginning of the trial, appellant's counsel asked the trial court to admit, in the defense case, the tape recording of Allen's 911 call to the police as proof that he lacked any criminal intent to commit robbery. He paraphrased Allen's statements on the 911 tape as follows: "[Allen] states, I'm not sure if he's joking or not, I'm not sure if he's joking, I thought it was best to call, better safe than sorry in this kind of neighborhood . . . [t]here's someone here who asked me for the money from the register, I'm not sure if he's joking or not, but I thought I should call." The Commonwealth indicated that appellant's paraphrase was "relatively accurate," but noted that it "[didn't] recall her saying that he *asked* for the money, it was that he *demanded* the money." (Emphasis added). Appellant argued that the 911 tape was relevant to prove that Allen thought he was joking when he asked for the money and therefore the tape was probative of his lack of criminal intent.

The trial court ruled that the 911 tape would be improper lay witness opinion testimony as to appellant's criminal intent, commenting that Allen's opinion as to his criminal intent "does not appear to fall within the gambit of those matters in which opinions may be given by laypersons." However, the trial court advised appellant that the 911 tape might be admissible if the Commonwealth "open[ed] the door to [Allen's] testimony and [appellant] cross-examine[d] on it properly, and the witness ma[de] a denial of it, then it could indeed become rebuttal or impeachment evidence."

Appellant did not thereafter seek to use the tape for impeachment purposes nor offer it as substantive evidence during the course of the trial. Neither the 911 tape nor a transcript of its contents was included in the record on appeal. The jury convicted appellant of attempted robbery. This appeal followed.

I.

THE 911 TAPE

Appellant asserts that the trial court erred in its pretrial ruling that the tape recording of Allen's 911 call to the police would be inadmissible lay opinion testimony of his state of mind when he made his demands for money from Allen and Ross.

Assuming without deciding that the trial court erred in its pretrial ruling, any such error was harmless. Code § 8.01-678 provides that "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be . . . reversed . . . for any error committed on the trial." "In a criminal case, it is implicit that, in order to determine whether there has been a fair trial on the merits . . . a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). In Clay, the Supreme Court adopted the federal standard, as

- 4 -

enunciated in <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946), for determining whether nonconstitutional error[1] is harmless error. The test articulated in <u>Kotteakos</u> is as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand.

<u>Clay</u>, 262 Va. at 260, 546 S.E.2d at 731-32 (citing <u>Kotteakos</u>, 328 U.S. at 764-65).

Allen and Ross both testified during the trial as to their initial uncertainty of whether appellant was serious in his demand for money from them. At best, the 911 tape of Allen's call for help to the police was cumulative of Allen's testimony. From the record before us, we conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole," that it plainly appears that appellant had a fair trial and the jury's verdict was not substantially affected by the exclusion of the 911 tape. <u>Kotteakos</u>, 328 U.S. at 765. <u>See also</u> <u>Pace v. Richmond</u>, 231 Va. 216, 227, 343 S.E.2d 59, 65 (1986) (exclusion of relevant evidence not reversible error if it is merely cumulative).

Accordingly, we find no error on this record that the trial court erred in its pretrial ruling related to the admissibility of the 911 tape.

II.

MOTION TO STRIKE

Appellant also contends the trial court erred in not granting his motion to strike the evidence. In order to convict appellant of attempted robbery, the Commonwealth was required to prove that appellant intended to take money from the employees of the fast-food restaurant by

---

[1] Appellant does not assert, nor does the record show, that the trial court committed constitutional error.

force or intimidation, and that he engaged in conduct that went "beyond mere preparation and be done to produce the intended result." Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986) (citation omitted). "Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." Martin v. Commonwealth, 195 Va. 1107, 1112, 81 S.E.2d 574, 577 (1954).

Here, appellant approached the employees of the fast-food restaurant armed with a knife and repeatedly demanded that they give him money, holding his knife with open blade on top of the cash register while repeating his demands. Allen was initially uncertain as to whether appellant was serious in his demand for money. However, his persistent repeated demands that she give him money, while displaying a knife blade, caused her sufficient apprehension to call 911. From this evidence the jury could conclude that appellant possessed the criminal intent to deprive the fast-food restaurant employees of money by force or intimidation, and that his repeated demands for money at knifepoint were direct acts towards accomplishing his criminal intent.

We therefore conclude that the trial court did not err in denying appellant's motion to strike the evidence, and that credible evidence in the record supports his conviction by the jury of attempted robbery.

III.

SENTENCING

Appellant also argues that the trial court abused its discretion in revoking his previously suspended sentences and in ordering a portion of those sentences be served consecutive to his sentence for attempted robbery.

When a trial court has previously suspended the execution or imposition of a sentence, "the court may revoke the suspension of sentence for any cause the court deems sufficient that

occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). In reviewing whether a trial court erred in revoking a previously suspended sentence, "[t]he court's findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." Allison v. Commonwealth, 40 Va. App. 407, 411, 579 S.E.2d 655, 657 (2003) (citations omitted).

The record shows that appellant previously received suspended sentences and was placed on probation in 2002, following convictions of drug offenses. He subsequently tested positive for cocaine use; failed to report to his probation officer; failed to submit to urine screens; failed to report to Drug Court; and absconded from his probation supervision. Additionally, appellant was convicted of attempted robbery while armed with a deadly weapon, a clear violation of the terms of his probation.

Given the record before us, we conclude that the trial court did not abuse its discretion in revoking appellant's previously suspended sentences and in ordering a portion of those sentences be served consecutive to his sentence for the attempted robbery.

CONCLUSION

For the reasons set forth above, we conclude the trial court did not err in its pretrial ruling as to the admissibility of the 911 tape; in denying appellant's motion to strike the evidence; and that it did not abuse its discretion in sentencing defendant to terms of consecutive one-year imprisonment for his probation violations, to be served consecutive to the three-year sentence imposed for attempted armed robbery. The judgment of the trial court is therefore affirmed.

Affirmed.